IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br><br>vs.<br><br><br>DAN LEE WRIGHT<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br><br><br>Case No. 1:08-cr-101<br><br>Judge Clark Waddoups |

Defendant Dan Lee Wright moves the court to suppress all evidence related to Count II of the Superceding Indictment charging him with one count of possession with intent to distribute five grams or more of methamphetamine on April 28, 2008. Count I of the Superceding Indictment was dismissed upon motion by the United States. The motion raises the question of whether the police officer had sufficient information to create a reasonable suspicion to advance from consensual to investigative questioning and detention of Mr. Wright. Although the Defendant presents a very close case in this situation, taking into account the totality of circumstances, the court concludes that the defendant's *Fourth Amendment* rights were not violated in this case and the motion to suppress is denied.

I.      BACKGROUND AND FACTUAL FINDINGS

An evidentiary hearing was held on April 30, 2009 at which Ogden police officer Larry Lewis testified.  No other evidence was presented.  Following the hearing, counsel for the United States and the defendant submitted briefing and oral argument was heard on July 30, 2009.  The facts in this case are not disputed, although the plaintiff and the defendant each argue to different conclusions from those facts.  At about 3:00 a.m. on April 28, 2008, Officer Lewis was on patrol in the area of 800 and Liberty Avenue in Ogden, Utah.  He testified that there are several gang houses and known drug houses in the area.  He also testified that the area is strictly residential, but there is "greater crime activity going on in that general area."[1]   He did not, however, provide detailed or statistical evidence to support his assertions.  Officer Lewis observed the defendant walking down the sidewalk.  Officer Lewis testified that it is unusual to have pedestrian traffic in that area at that time of the morning.  He admitted on cross-examination that he did not see the defendant coming out of a drug house and that there are a lot of hard-working people in that neighborhood. The defendant was wearing a black leather jacket, black gloves, black pants and had a small fanny pack.  The temperature was about 40 degrees.  Officer Lewis acknowledged on cross examination that it is not unlawful to be walking down the street at 3:00 a.m. and that it is not uncommon to wear black jackets, black gloves and dark colored pants.  He further admitted that he did not see the defendant standing in the shadows or looking in the windows of cars or homes. The only behavior he observed was the defendant walking down the street and that was the basis for his actions. The officer was not at the time investigating any burglaries.

---

[1]  Tr. 8:21–22 (Dkt. No. 55).

The officer pulled ahead of where the defendant was walking and, without activating his emergency lights, got out of his vehicle and walked toward the defendant.  The officer did not draw his weapon or make any threatening movements toward the defendant.  The officer asked the defendant, "if he would mind to stop and talk with me."[2]  The defendant slowed his step and said, "sure."  Officer Lewis asked the defendant where he was going and where he was coming from.  The defendant said he had just left a friend's house in the area of 23rd and Jefferson Avenue and he was headed to a buddy's house somewhere in north Ogden, but he did not know the address.[3]  At that point, the officer asked the defendant for identification.  The defendant handed the officer a Utah identification which identified him as Dan Lee Wright.  The defendant does not question that the interrogation had been consensual up this point.

Officer Lewis then, without returning the defendant's identification, asked the defendant "if he had any warrants at that time."[4]  The officer testified, "He told me that he had a couple of fines he was paying on but didn't believe he had any warrants."[5]  Continuing to hold the defendant's identification, Officer Lewis then walked to his police truck, which was five to seven feet away, and ran a warrant search.[6]  He testified that while he was running the search, the defendant began to sweat.  Officer Lewis asked the defendant if he had been jogging, which he

---

[2]  Tr. 14:8–9 (Dkt. No. 55).

[3]  Tr. 14:22–25 (Dkt. No. 55).

[4]  Tr. 15:9–10 (Dkt. No. 55).

[5]  Tr. 15:11–12 (Dkt. No. 55).

[6]  Tr. 15:14–25 (Dkt. No. 55).

denied.  The search revealed that the defendant had two warrants outstanding for his arrest.[7]  The

officer then proceeded to further question the defendant and place him under arrest.  Incident to

the arrest, the officer found four plastic baggies containing a substance which tested as

methamphetamine.  The defendant has not challenged the officer's conduct following his

discovery of the outstanding warrants.

II.    **DISCUSSION**

        The defendant argues that Officer Lewis did not have a reasonable suspicion to stop the

defendant or to retain his identification while he conducted a warrant search.  He argues that a

reasonable person would not feel free to terminate his encounter with the officer or leave as long

as the officer continued to hold his identification.  The defendant argues that without reasonable

suspicion the officer lacked a proper basis for an investigative detention and questioning and,

therefore, the warrant search was illegal and all evidence recovered as a result of discovering the

outstanding warrants must be suppressed.

        The burden of initially presenting evidence that an investigative detention was reasonable

falls on the government.[8]  Once the government produces evidence to support the reasonableness

of the detention, in this Circuit the proponent of the motion to suppress bears the burden of

proof.[9]

---

[7]  Tr. 16:13 (Dkt. No. 55).

[8]  *United States v. Salzano,* 158 F.3d 1107, 1111 (10th Cir. 1998).

[9]  *United States v. Clarkson*, 551 F.3d 1196, 1200 (10th Cir. 2009), *United States v. Jackson*, 213 F.3d 1269 (10th Cir. 2000); *United States v. Moore*, 22 F.3d 241 (10th Cir. 1994). *Cf. e.g.*, *United States v. Knight*, No. 08-14047, 2009 U.S. App. LEXIS 15206 (11th Cir. July 8,

4

The *Fourth Amendment* guarantees the right of the "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  It does not, however, preclude reasonable inquiries by the police, but is intended to "prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals."[10] These protections have been held to apply with increasing degrees of scrutiny in three different encounters between individuals and law enforcement.  "(1) consensual encounters[,] which do not implicate the *Fourth Amendment*; (2) investigative detentions[,] which are *Fourth Amendment* seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of *Fourth Amendment* seizures and reasonable only if supported by probable cause."[11]

Mr. Wright argues that, although the initial inquiry by Officer Lewis was consensual, his inquiry became an investigative detention once he looked at the defendant's identification and identified the defendant as Dan Lee Wright.  At that point, the officer was required to return the identification to the defendant.  The failure to return the identification constituted a detention because a reasonable person would not believe he was free to end the encounter and leave until the officer had returned his identification.

2009), citing *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) ("The government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the *Fourth Amendment*.").

[10] *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).

[11] *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir. 2006) (quotations and citation omitted).

The Tenth Circuit has explained the analysis to be applied to assure that the officer has

met the *Fourth Amendment* requirements as follows:

> In assessing the constitutionality of an investigatory stop, we ask whether the circumstances demonstrate that law enforcement officers had reasonable suspicion that criminal activity may have been afoot. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002); *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205-06 (10th Cir. 2007). In making this determination, we look at the totality of the circumstances to determine whether a particularized and objective basis, viewed from the standpoint of an objectively reasonable police officer, existed for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273. Courts may not evaluate and reject each contributing factor in isolation, for reasonable suspicion can exist even if each individual observation is susceptible of innocent explanation. *United States v. Guerrero*, 472 F.3d 784, 787 (10th Cir. 2007). Rather, even factors that are entirely innocent when taken separately can support a lawful detention if, taken together, they reasonably suggest the presence of illegal conduct. *United States v. Ramirez*, 479 F.3d 1229, 1244 (10th Cir. 2007); *see Guerrero*, 472 F.3d at 787. In analyzing whether a given set of factors gives rise to the requisite reasonable suspicion, we are reminded that we must "be careful to judge the officer's conduct in light of common sense and ordinary human experience but also to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances." *Ramirez*, 479 F.3d at 1244 (internal quotation omitted).[12]

Because Mr. Wright does not challenge the initial inquiry, the issue in this case is whether, once

the officer had verified the defendant's identification, he had "a particularized and objective

basis," when considering the totality of the circumstances, to believe the defendant was or had

been involved in criminal activity. More specifically, did the officer have a basis for reasonable

suspicion to ask the defendant if he had any outstanding warrants? The government argues that

the officer did and, even if he did not, Mr. Wright was not detained and could have left without

answering the question or subjecting himself to further inquiry. The government urges the court

to adopt the reasoning of *United States v. Weaver* that retaining possession of a drivers license, or

---

[12] *United States v. Lopez*, 518 F.3d 790, 797 (10th Cir. 2008).

in this case the defendant's identification, does not preclude a person from leaving and thus "blossom[] into an unconstitutional seizure."[13]

This Circuit has generally rejected that reasoning.  In *United States v. Lambert*, the court reversed a denial of a motion to suppress where the officers lacked a reasonable suspicion to detain the defendant, but retained his license while they continued to question him.[14]  The court stated "a consensual encounter quickly became an investigative detention once the agents received Mr. Lambert's driver's license and did not return it to him."[15]  The court recognized that "as a practical matter" the defendant could not leave without his license, even though he may have technically been able to have done so.  In *United States v. Edgerton*, the court recognized that although the officer may have reasonably stopped the defendant's car because he could not read the expiration date on her temporary permit, once he was able to read the expiration date, the basis for the stop ended.[16]  Relying on *United States v. McSwain*,[17] the court held that, once the officer was able to read the temporary permit, the basis for the stop dissipated and the defendant should have been allowed to continue without producing her license and registration.[18] The officer's further investigation was unreasonable and the motion to suppress should have been

---

[13]  *United States v. Weaver*, 282 F.3d 302, 312 (4th Cir. 2002).

[14]  *United States v. Lambert*, 46 F.3d 1064, 1068, 1071 (10th Cir. 1995).

[15]  *Id.* at 1068.

[16]  *United States v. Edgerton*, 438 F.3d 1043, 1048, 1051 (10th Cir. 2006).

[17]  29 F.3d 558, 561–62 (10th Cir. 1994).

[18]  *Edgerton*, 438 F.3d at 1051.

granted.  In *United States v. Eckhart*, the defendant moved to suppress, arguing that the officer unreasonably extended the initial stop which was made because he could not read the license plate on the vehicle.[19]  The court recognized the principles stated in *McSwain and Edgerton*, but distinguished the case on the ground that the continuation of the stop was reasonable because the plate was not lighted as required by state law.

In *United States v. Guerrero*, the court recognized that retaining a license to run a warrant check converts the encounter into an investigative detention.[20]   The officer must have met the *Fourth Amendment* requirements for reasonable suspicion to retain the license and conduct a warrant search.  The requirement remains even though the initial stop may have been consensual. In considering whether the officer had reasonable suspicion, the court must determine whether an objectively reasonable officer, judged in the light of common sense and ordinary human experience and giving deference to the officer's training and experience, would have had "an articulable reasonable suspicion that criminal activity may be afoot."[21]

In this case Officer Lewis verified Mr. Wright's identification.  Once he had done so, he did not have a consensual basis to retain his identification.  Rather than return the identification, Officer Lewis asked Mr. Wright if he had any warrants.  The asking of that question converted the encounter from consensual to investigative because it could implicate Mr. Wright.  To meet the *Fourth Amendment* requirements, the officer was required to have an "articulable reasonable

---

[19]  *United States v. Eckhart*, 569 F.3d 1263 (10th Cir. 2009).

[20]  *United States v. Guerrero*, 472 F.3d 784, 786–87 (10th Cir. 2007).

[21]  *Lopez*, 518 F.3d at 799; *see, e.g., United States v. Olivares-Campos*, 276 Fed. Appx. 816 (10th Cir. 2008); *United States v. Ramirez*, 479 F.3d 1229, 1244 (10th Cir. 2007).

suspicion" to conduct this investigation. Walking alone at 3:00 a.m. is not sufficient by itself to support such a suspicion.  Neither is wearing dark clothing nor walking from a friend's house. All are consistent with innocent activity and do not suggest any reason to suspect that Mr. Wright may have outstanding warrants.  The analysis becomes more difficult, however, when the court considers Officer Lewis' testimony that the area was a high crime area, with drug and gang houses.  In addition, Mr. Wright provided no detail in response to the question about where he was going, saying "he was headed to a buddy's house somewhere in north Ogden" and that he "didn't know the address."[22]  Officer Lewis apparently did not ask any follow up questions about where in north Ogden the friend may have lived.  Further questioning would have been proper in light of the vague response and the answers helpful to make a judgment about the legitimacy of the response.  Nevertheless, in a common sense view, one would have expected a more complete answer such as the name of the street or general area in which the friend supposedly lived.  Given the hour of night, the officer's knowledge of crime in the area, the dark clothing and the vague, if not unusual answers given by the defendant, the officer, based upon his experience and considering the totality of the circumstances, had sufficient reasonable suspicion, which he articulated at the hearing, to ask the next question of whether Mr. Wright had any warrants. Although the support for this determination is weak, it is consistent with the guidance that the court "grant deference to a trained law enforcement officer's ability to distinguish between

---

[22]  Tr. 14: 23–25 (Dkt. No. 55).

innocent and suspicious circumstances"[23] and that the defendant has the burden to prove that the motion to suppress should be granted.[24]

Mr. Wright's response to the question about warrants provided additional suspicion to support running a warrant check.  Mr. Wright responded that he was paying on some fines, but "didn't believe he had any warrants."[25]  The response was sufficiently ambiguous, given all of the other circumstances, to support an additional brief detention while the warrant search was made. There is no evidence about how long the warrant search lasted, but the defendant does not argue that it was an excessive amount of time.

Once the search revealed that there were two outstanding warrants, the officer reasonably continued the detention and eventual arrest.  The motion to suppress is DENIED.

DATED this 13th day of August, 2009.

BY THE COURT:

_____

Honorable Clark Waddoups
U.S. District Court Judge

---

[23] *Lopez*, 518 F.3d at 797.

[24] *Clarkson*, 551 F.3d at 1200.

[25] Tr. 15:12 (Dkt. No. 55).